Good morning. Welcome all. We are informed that your panel today, as I'm sure you know, are Judge Newman, Judge Lynch, and I, and we are informed that counsel are present and ready to go. Is counsel present for the United States and for Mr. Davis in the in the bail argument? Yes, Your Honor. Yes, Your Honor. Okay. We will begin that. And Mr. Kassar? Yes, Your Honor. For Mr. Davis, please proceed. The legal issue before this court is whether the government has carried its burden demonstrating no conditions or combination of conditions can be set to reasonably assure Davis' appearance in court and protect the community from danger. Under 18 U.S.C. 3142, generally the courts must release a defendant on bail under least restrictive conditions or combination of conditions that will reasonably assure defendant's appearance are required in the safety of the community. The initial detention order back in November of 2017, court found that there was clear and convincing evidence that no conditions of release would reasonably assure the safety of the community. Did not find that my client was a flight risk. That initial order was unopposed by prior counsel. I don't believe there was any bail application performed by or conducted by the prior counsel. In this particular case, the government has to prove by preponderance of the evidence that my client is a flight risk. And they attempted to do that by saying that he's got several, about 10 bench warrants for failure to appear. We went through each and every one of those warrants. We've indicated that at least seven of them were issued while he was in court, while he was in jail, detained. And one of them, I think, was a pre-arraignment warrant. Pre-arraignment warrant on which he was to be brought in and arraigned? I believe that, yes, there was one warrant was issued pre-arraignment. So he didn't even have court. He didn't even have notice of that case. And bail had not been set? Right, right. But in addition, I've also pointed out in my paperwork that as soon as my client was released from the underlying sentence, he went and voluntarily vacated those warrants. Shows that he's not at risk of flight. So the government clearly did not carry the burden that he is a flight risk. Now, on the issue of danger to the community, where the government has to prove by pre-convincing evidence that my client is a danger, they didn't prove that as well. They indicated that in their paperwork that he had been accused, they claim, of smuggling contraband into the jail. That is just not true. He did not. He did not do that. He was never charged for that. He was never disciplined for that. There's no record by the government from the jail that he was involved with that. He denies any membership in a gang. Somebody's got some feedback going? The issue here is whether the government met their burden. And it's our position that they haven't and that there are reasonable conditions that can be set in light of his health conditions, in light of the pandemic, home confinement supervised by pretrial services, the curfew and a monitoring system would meet all of the requirements to allow him to be released. Okay. Thank you, Mr. Kassar. We'll hear from the government. Thank you, Your Honor. May it please the court. The district court here did not air in continuing this defendant's detention, even setting aside the presumption favoring detention, which both parties agree exists here. It's undisputed that this defendant is charged with three separate famed shootings, has sustained 17 criminal convictions, was arrested while on conditional release, has failed to appear in court on multiple occasions, and now faces a substantial mandatory sentence on a case where video show him engaged in charge drug sales and firearms offenses. Just with respect to the point that appears to be in dispute regarding the bench warrants and whether he was actually in custody already when those warrants issued. Is there other evidence that he failed to appear? Yes, Your Honor. In fact, the bench warrants here, certain of them issued while he was in custody on other matters, but at least three of them issued while he was released. He was not otherwise in custody. And defendant's response as to those warrants is simply that he later appeared, but that does not take away the fact that he initially did not appear. Did your papers say that he failed to appear on multiple occasions? Were you including some where he was in custody? There are at least three occasions, Your Honor, where he was not in custody when a bench warrant issued, even by defendant's own letters. Did your papers make that clear that you're only talking about the three where he wasn't in custody? The papers before the court from the government did not specify those points on the original motion, but defendant's own letter, which was before the district court, clearly establishes those points as he outlined the different dates when the warrants issued and when his client was in custody. That information was available. Okay. On the health side of the claim, it's reported he's in, I think the papers say, segregated housing. Is he in an isolation cell? That's my understanding, Your Honor, that he remains in isolation right now. That's correct. Well, yes, but I'm trying to understand what that means. Is it a one bunk cell or is it a double bunk cell? I do not know the specifics of the isolation unit at MCC, Your Honor. I do know that he has been in isolation, not simply related to medical conditions related to the pandemic or to safety concerns, but because of prior disciplinary conduct against the defendant within the prison. If he's not in a one bunk cell, do you know, is it possible to put him in a one bunk cell in that facility? I do not, Your Honor. I can get that information for the court. I mean, you would agree, whether the condition is one on CDC's list, I think, wouldn't you agree it is a serious health condition? Your Honor, essentially the defendant suffers from acid reflux. Now, he has suffered complications from that condition, all of which has been addressed. He's been giving you medication. Well, when you say complications, some might regard that as using it. He coughed up blood, does he not? A lot of people have acid reflux. They don't cough up blood. This man is coughing up blood, is he not? Well, the information from MCC is that because he was not on the necessary medication for a period and was not receiving appropriate diet, the complications were causing him to vomit food particles, which did have blood in them when he vomited. Since April 3rd, he's not complained of additional medical issues. And that's including as recently as a June 16th status conference, where he had the opportunity to raise any such issues if they persisted. So the record before the trial date has been set tentatively for October 23rd. I apologize, October 13th, Your Honor. Ms. Castro, this is Judge Lynch. Are you relying here in this court on a danger to the community or only on flight risk? Your Honor, I would argue that the government has established its burden on both. The defendant has established prior non-appearance. He's established continued arrest while he's on relief, both of which indicate danger to the community and risk of flight. He faces a mandatory 55 years incarceration. There's substantial evidence against him. He's been indicted for gang-related shootings on three separate occasions. All of this establishes both a danger to the community and a risk of flight. And I would submit that the record provides ample basis to uphold the district court's decision to continue his detention on these facts. What is the status of those indictments that you just referred to? Those indictments are pending. That's the indictment on this matter, Your Honor. Three separate indictments in this matter? It's one indictment, Your Honor. But in that indictment, he's charged with three separate gang shootings, shootings in relation to his member in the blood stand. All right. I think generally we call that three counts, right? Thank you. Yes, I apologize, Your Honor. Okay. And then what, if any, evidence is there with respect to the smuggling that there's some debate over of controlled substances? I think it's amphetamines and methamphetamine into the facility. Yes, Your Honor. I mean, those drugs were recovered. So defendant may argue that there's no evidence here, but he says nothing of the fact that those drugs were recovered in the process of the defendant attempting to smuggle them in, and they were tested and tested positive for narcotics. And in the course of the attempt, it was somebody else bringing them into him, and that person says, he asked me to do this, or how did it break out? It's not my understanding that we have any statements from a witness in that case. But based on observations from personnel at the prison, the understanding is the attempt was smuggled the drugs in, in his child's diaper. And when the child was handed over to him, they observed something drop, and in the course of interacting with him and approaching him at that time, drugs were recovered, which were later tested. Okay. Thank you. This is Judge Newman. Again, on the health issue. Yes. Our inmates, he's in the MCC, is that correct? That's correct. Are, are, are prisoners in the MCC wearing masks? There is a mandatory update that the court, MCC must give to the court in the Eastern District on a regular basis, and that provides information that PPE equipment has, has been handed out to prisoners within the MCC. Handed out? Is it a requirement? Has been provided to them. But there's no requirement that they wear them? I, I'm not certain if it's enforced. I'm not certain if they penalize defendants in any way, if they're not wearing masks, but certainly that protective equipment is made available to them. Well, you say you don't know if they're penalized. Is there even a requirement? I understood you to say the equipment, the masks have been handed out. Is there even a requirement that they wear? I do not know that specific point, Your Honor, but I can certainly look into whether it's been specifically required. What I do know is that those, those materials are available to the inmates and have been handed out. So if Mr. Davis wanted such equipment, he could have it? That's correct, Your Honor. If he's in a double bunk cell, I take it he can't require his cellmate to wear it? I'm certain Mr. Davis himself cannot require his cellmate to wear it, but if he had concerns, he could raise it with NCC and request either to be further isolated from that individual or to seek some action as to his failure to properly guard against the condition. Well, you say you're certain of that. How soon could you advise us, first, whether he's in a single bunk cell now, and if he's not, whether he could be transferred to one? How soon he could be transferred to one within that facility? Can you advise us on both those points? Yes, Your Honor. I can get information from the NCC by tomorrow advising the court of what availability there is to place the defendant within a single bunk cell. And have him remain there? I apologize? And have him remain there? I can certainly inquire as to how long he would be permitted to remain there, if there would be a limitation, or what the conditions would be around that. Judge Newman, I interrupted. I'm sorry. No, no, no, that's okay. Does the government have a position on whether a man with this health condition should be in a single bunk cell, or are you indifferent to that question? I, well, my concern and my question is more rather whether, I'm not certain this defendant would choose, would want to be in a single bunk cell. It's my understanding he's actually attempted to be released from isolation during the pendency of the pandemic. So I hadn't really contemplated whether it's preferable to place him in a single bunk cell. But if that's what would alleviate either the defendant's or the court's concerns about his potential risk, the government would have no opposition to placing him and seeking to place him in a single bunk cell to ensure he's further isolated from any potential spread of COVID-19. When you say he sought to be released, are you saying he sought to be returned to general population? Or did he want to just be released into home confinement under supervision? Not just home confinement, Your Honor. The defendant had been placed in isolation, and he had made representation seeking to be released from being placed in isolation. So general population, Your Honor, not just temporary release. And the isolation, sorry, Judge, go ahead. I just wonder whether his counsel knows the answer to that question, where he wants to be. Judge, he does want to be in general population. He wants to be in a safe environment. We've only requested that he be released to home confinement, not from a cell or within the jail. My understanding that he does have a cellmate, and it's very precarious conditions. You're disputing the government's position that he wants to be in general population. That is correct. Well, let's try to be a little clearer, Mr. Kassar. I took the government to be saying that he opposed a transfer to the SHU, which is under ordinary circumstances, something you'd expect an inmate to do. And I didn't take them to be saying that he desires as his first choice to be in the jail in general population. But do you have any understanding as to what his position was with respect to being placed in the segregated housing unit? Well, I know that he doesn't want to go there for disciplinary reasons where he feels that they're unfounded. So perhaps the government is merely saying, and I guess we can get back to Ms. Castro on this, is what you're really saying, Ms. Castro, that he questioned the charges or opposed being found guilty of this infraction? My understanding was both, Your Honor. He wanted to be released from the SHU and was asserting that there was no basis to keep him there. But the fact remains, he was seeking release from the SHU, not simply just for home detention, for release from the SHU. There are two separate issues or two separate actions. And the bail application obviously is not asking for him to be, as a condition of his confinement, kept in general population. The bail application is asking that he be released into the community on conditions. Presumably there are separate issues within the institution as to where he is to be housed and why. Certainly. I agree his bail application was not for a release in SHU, did not involve an argument that he should be released into general population. My point was simply that he has been held in SHU. During the pandemic, he has sought to be released from SHU, period. And separate, apart from that, there was also the request for temporary release on home detention. All right. This is Judge Newman. I still want to know from defense counsel, apparently we have learned that he is in a double box cell at the moment, but not under the restrictions of segregated housing. So if we were to make as part of our ruling a condition that affected the conditions of his in prison confinement, if his only choices, assuming he loses his release application, if his only choices are a single bunk cell subject to the conditions of segregated housing or remaining in his double bunk cell where he is now, what would be his preference if you know? I do not know. I do not know. But I also just want to make a clarification regarding the smuggling of drugs. You know, he's never been charged with that either or found or found discipline to that he has to jail or charged with that criminally. Well, Mr. Casar, why is he in the SHU? Well, why is he in the SHU? That's a good question. We believe that he's being, you know, he's being punished. So the government obviously believes, and according to Ms. Castro has evidence, that there was an effort, whether or not at his request to smuggle drugs to him in the institution and that drugs were seized. That's the state of play. Whether or not there is some due process violation of how he's being housed in the jail or whether he's entitled to some hearing on that before being placed in the SHU are all separate questions. What we're concerned with here is a bail application, which is about whether it is, the government has established that there are no conditions that would guarantee his appearance in crosscut with the special conditions that he arguably is at serious risk of illness while he is in the jail. That's what we're talking about, it seems to me here, not whether he has been appropriately disciplined by the authorities by being placed in the SHU. Am I wrong about that? You're asking me that question. Yes, I agree with you. Okay. Your Honor, unless the court has further questions, Your Honors, for the government, we would rest on our submission. It's our position that the record demonstrates the defendant's dangerousness, demonstrates he has a risk of flight, and there's ample basis to respond to the questions that Judge Newman has laid out for you. Yes, Your Honor. I just do want to confirm the question is whether or not the defendant can be transferred to a single bunk cell and the conditions around that, meaning how quickly it could occur and how long he could remain there. Is that correct? I think there was also a question, if I'm not mistaken, about whether prisoners in the And I guess as you're doing that, just confirm that if they want PPE, protective equipment, it is available to them. Understood. I will identify that as well in the letter, Your Honor. Great. Thank you. And you could have that to us tomorrow, say, does that work for you? So long as you can get the answers from the MCC? Yes, Your Honor. I will endeavor to get those answers immediately and file it as soon as possible, with the goal being tomorrow. That would be great. And Mr. Kassar, if you want to respond or, I hate to use the word rebut, but give a counterfactual to any of that, it would be helpful to get that within a day of receiving the government's letter. Thank you. Thank you very much. I'll do that. Thank you. Okay. Anything else, my colleagues? Not for me. No. Okay. So we'll have letters from the two of you no later than, what's today, Tuesday, no later than Thursday, and we'll reserve decision until that point and then get back to you shortly thereafter. Thank you very much. Thank you, Your Honor. Thank you both.